ANSONIA BRASS & COPPER CO. *v.* ELECTRIC SUPPLY CO.

(*Circuit Court, D. Connecticut.* May 18, 1888.)

PATENTS FOR INVENTIONS—PATENTABILITY—INVENTION—REHEARING.
Petitions for rehearing the above-entitled cause for infringement of letters patent No. 272,660, dated February 20, 1883, to A. A. Cowles, for an improvement in insulated electric conductors, (32 Fed. Rep. 18,) denied, upon the ground that the patent is void for want of patentable invention.

In Equity. Bill to restrain an alleged infringement of letters patent No. 272,660, of February 20, 1883, to Alfred A. Cowles, for an improvement in insulated electric conductors. The bill having been dismissed, (32 Fed. Rep. 81,) complainant now moves for a rehearing.

*Joshua Pusey* and *Chas. E. Mitchell*, for the motion.

*Morris W. Seymour* and *Benj. F. Thurston*, contra.

SHIPMAN, J. These are two petitions for a rehearing of the above-entitled cause, which was decided September 3, 1887, (32 Fed. Rep. 81.) The first is based upon an error of the court upon the record, in coming to the conclusion that paint was so applied to the Holmes wire, which preceded the Cowles wire, as to produce a non-combustible insulator. The second is based upon alleged newly-discovered evidence, which tends to prove that the Holmes covering was not non-combustible. The allegations in the second petition, which explain why the testimony was not obtained before the original hearing, are an insufficient foundation upon which to base an application for a rehearing, but the strength of the case adequately appears upon the first petition with the accompanying affidavits, which throw light upon the proper interpretation of Edwin Holmes' testimony. The petitioners do not deny that Holmes, as early as in 1860, insulated his wire by the process which he described in his testimony, and which is recited in the opinion, viz., by covering the wire with a double coat of thread, each layer being successively painted. He also used two other processes,—by one he covered the wire with two layers, and then painted; and by the second he painted a single thread covered, wiped off the surplus paint, dried the coat, and covered the wire with another layer of thread. The first process, which I will call the Holmes method, produced the best insulation. The affidavits show

that the first coat of paint was more thoroughly dried than Holmes seemed to represent in his previous testimony, and was well dried; the affidavits also carefully state that the wire was not non-combustible. A piece of the burglar-alarm wire which Holmes put into a dwelling in or near 1872 is produced. It is a slender wire, and is insulated by a single coating of painted thread. A double coating of the same kind of thread, doubly painted, if wound in the same way, would not, in my opinion, have made the article non-combustible. In view of these affidavits, I shall assume that the Holmes burglar-alarm wire, as he made it, was not non-combustible, and that the first coat of paint had dried before the second was applied. It is also true, and the experiments of Mr. Earle show, that an insulated wire of the usual size for electric lamp lighting, braided by the well-known method, and prepared according to the Holmes system, as now explained,—that is, the first coat of paint having dried before the second covering was put on,—will not set fire to the covering, and that the covering is non-combustible, in the sense in which the term is used.

The case was decided upon the ground that no previous patent or method of insulation was an anticipation, but that, in view of the Holmes system, as the same was understood, the Cowles process was not a patentable invention. The question now is whether the decision should be changed, in view of the fact that the Holmes system, as he practiced it on burglar-alarm wires, did not produce non-combustible insulation. The question is now, as before, that of patentable invention. It abundantly appears that the non-combustible insulator for inside electric lamp wires, which Cowles gave to the public, was practically a new and a very useful thing, but no one can read the original record without receiving the idea that if Cowles can be considered an inventor within the meaning of the patent law, he is on the edge of the line which separates invention from mere improvement. This impression is derived from the patent itself, from the history of the art of insulating electric wires, and from the grounds upon which the patent was vindicated by the able expert for the plaintiff. Before the introduction of electricity into dwellings for illuminating purposes, a principal object of insulation was to protect the electric wire from the effect of dampness, and divers water-proof materials were used in divers ways to saturate the fibrous covering of the wire. One method was to apply insulating, but combustible, material, such as pitch or ashphalt, to a layer of fibrous covering which was wound directly upon the wire, and, while this material was still in a wet or unset condition, to add to the first coat a second fibrous covering. Thus the effect of saturating double fibrous coverings by the application of the second covering while the first was wet, was known. The time came when a combustible covering must be displaced, and, instead a covering saturated with an inflammable material, Cowles used a covering of thread,—an old covering,—saturated or permeated with metallic paint, the article which Holmes had used for his burglar-alarm wires, and caused the covering to be permeated in the way which must have become familiar.

The position of the counsel for the plaintiff in regard to patentability is that Cowles discovered that there was a non-combustible property in paint, when applied as he applies it, which enables currents used in electric lighting to be employed with safety inside of buildings. This position is stated more at length by the expert, who defines the improvement of the first claim to be "the confining and pressing into the fibrous covering of the solid material of the paint, so that such fibrous covering is filled and loaded with as much of the metallic oxides or carbonates as is necessary to render the fibrous covering practically fire-proof, and at the same time sufficient fibrous material is made use of to bind the non-combustible mineral substance of the paint, so that the same will not crack or break off under the ordinary handling to which the wire is necessarily subjected." He says, further, that the article of the second claim "is distinguishable from other articles that had before been made wherein paint might have been used, by the fact that the paint fills the interstices of the covering, which cannot be the case where paint is applied on the outside only, or where a second layer of fibrous material is applied outside of a paint that may have become hardened to such an extent that the threads do not imbed themselves into the same." Neither counsel nor expert really contends that Cowles discovered the non-combustibility of metallic paint, or that he discovered that a fibrous article clothed with metallic paint was thereby enabled to resist the effect of heat, and that, when heat was applied, it had a tendency to char, rather than to blaze. The strength of Cowles' claim of title to invention consists in the fact that he introduced an adequate and efficacious way of applying the metallic paint so as to make the covering thoroughly non-combustible. There was, in my opinion, no invention either in the selection of paint as a means of non-combustible insulation or in the process of applying the paint. There was no novelty in either the knowledge of the fact that the liquid material which is applied to the fibrous covering should be applied so as to thoroughly saturate it or in the knowledge that the pressure of a second fibrous covering upon a wet and plastic covering tends to saturate each. There was no invention in the selection or ascertainment of the particular method by which the paint should be made to permeate the covering. Coverings of electric wire had been previously saturated with insulating material by the three steps which are named in the patent. It was a good way in which to cause the metallic particles of the paint to be diffused through the coverings, and other ways might easily be selected which would accomplish the same general result. As was said in the former opinion, there was in the adoption of the patented method "only a skillful selection of one of a number of methods at the hand of the patentee." The present thorough presentation of the character of the Holmes covering does not, in my opinion, change the result which was reached, because, however beneficial the Cowles wire is, it was not an invention. The prayers of the petitions are denied.